UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


VINCENT J. KING,

        Plaintiff,

v.                                    Civil Action No. 15-11543

ERIE INSURANCE PROPERTY & CASUALTY CO.,
MARGOLIS EDELSTEIN, and
SANDRA D. BARKER,

        Defendants.


MEMORANDUM OPINION AND ORDER


        The parties have submitted memoranda concerning
subject matter jurisdiction, as directed by the court in its
order of October 26, 2015.


I. Background


        This action arises from a civil suit filed against
plaintiff Vincent King in the Delaware Court of Chancery, styled
36 Builders, Inc., D/B/A/ Insight Homes, and Robert M. Lisle v.
Vincent J. King.  See Erie Mot. to Dismiss, Ex. A at pp. 2-9.
In that case, the plaintiffs (the "Builders") charged King with
committing various torts, including defamation and tortious
interference with business relations.  These allegations are
based on King's operation of a website that lampooned the
Builders' commercial website.  See id.

According to King, he received notice of the first Delaware action on June 28, 2014.  King Complaint ("King Compl.") ¶ 6.  Immediately thereafter, he sent a copy of the Builders' complaint to his insurer, defendant Erie Insurance Property & Casualty Company ("Erie").  Id. at ¶ 8.  King requested that Erie provide a defense pursuant to two insurance policies King held with Erie -- the "HomeProtector" policy and the "Personal Catastrophe" policy.  Id. at ¶¶ 8-9; see also Plaintiff's Reply to Response in Opposition to Motion to Amend ("Pl.'s Reply (Amend.)"), Ex. 1.  King alleges that it was not until July 11, 2014, that Erie responded to his request for a defense.  King Compl. ¶¶ 14-15.  On that same day, Erie advised King of its decision to provide a defense under the HomeProtector policy, subject to a reservation of rights.  Id. at ¶ 15.  Erie allegedly also opened a claim under King's Personal Catastrophe policy, id., although it appears that no action was ever taken on that claim.  See id. at p. 14 ("Although there are exclusions contained in the Personal Catastrophe police, none have been asserted or reserved and, indeed, no formal response . . . has ever been received.").  Defendant Sandra Barker, an Erie claims manager, was assigned to oversee the coverage issues surrounding King's claim.  Id. ¶¶ 4, 15-22.  Defendant Margolis Edelstein, a Pennsylvania law firm,

was eventually retained at the instance of Barker to represent King in the Delaware action.  Id. at ¶¶ 3, 17-18.

King claims that Margolis was unresponsive to King's tactical suggestions, id. at ¶¶ 27, 29, 30, monopolized the mediation and settlement process, ¶¶ 32-38, and pressured King into settling despite his hesitance to do so, ¶¶ 39-42.  King also alleges that Erie failed to attend a mediation conference at Margolis' insistence.  Id. at ¶¶ 33, 48.  Nevertheless, the parties in the Delaware action entered into a confidential settlement agreement on August 17, 2014, under which King claims to have received $515,000.00.  Id. at ¶¶ 41-43.

The court pauses to note that on August 5, 2015 -- after King had initiated the present action on June 26, 2015 -- the Builders filed a new complaint against King in the Delaware Court of Chancery.  See Second Delaware Complaint.  In the second Delaware complaint, the Builders alleged that King breached the parties' confidential settlement agreement in the first Delaware case.  Id. at ¶¶ 12-20.  The Builders sought injunctive relief, specific performance of the settlement agreement, and damages for breach of contract.  Id. at ¶¶ 23-34. The second Delaware action was dismissed by stipulation on September 21, 2015.  See King's Objection to Scheduling Report, Ex. 2.

By letter on November 24, 2014, King requested from Erie copies of various documents related to the investigation, processing, and settlement of the first Delaware action.  Id. at ¶¶ 44-46.  Erie refused, citing the attorney-client and work-product privileges.  Id.  In response, King, appearing in this action pro se, filed a seven-count complaint in the Circuit Court of Wood County, West Virginia, on June 26, 2015.  See King Compl., p. 1.

King seeks four declaratory rulings (Counts 1, 2, 3, and 5), id. at pp. 10-14, 15-16, and requests an award of reasonable attorney's fees to the extent he prevails on one or more of those counts (Count 7).  Id. at p. 18.  King also charges Erie and Margolis Edelstein with "professional negligence" (Count 4), and charges Erie and Barker with numerous violations of the West Virginia Unfair Trade Practices Act ("UTPA"), W. Va. Code § 33-11-1 et seq., (Count 6).  Id. at pp. 14-15, 16-18.

On July 27, 2015, Erie removed to federal court, citing 28 U.S.C. §§ 1332(a) and 1441(a).  See Notice of Removal. Erie claims that Barker -- who appears to be the only non-diverse defendant -- was joined solely to avoid removal on the basis of diversity jurisdiction.  Id.; see also Defendants'

4

Joint Memorandum in Support of Jurisdiction ("Def. Mem."), p. 1.
King, a resident of West Virginia, has not moved to remand.

On October 26, 2015, the court directed the parties to
brief the matter of subject matter jurisdiction, with particular
focus on the amount in controversy and the claimed fraudulent
joinder. <u>See</u> October 26, 2015, Order. The defendants submitted
their memorandum in support of jurisdiction on November 2, 2015,
and King filed his response on November 9.

## II. <u>Governing standard</u>

When a defendant removes an action to federal court,
"federal removal jurisdiction exists if the action is one 'of
which the district courts of the United States have original
jurisdiction.'" <u>In re Blackwater Sec. Consulting, LLC</u>, 460 F.3d
576, 583 (4th Cir. 2006) (<u>quoting</u> 28 U.S.C. § 1441(a)). Federal
district courts have original jurisdiction, among other
circumstances, "where the matter in controversy exceeds the sum
or value of $75,000, exclusive of interest and costs, and is
between citizens of different States." 28 U.S.C. § 1332(a)(1).

"If at any time before final judgment it appears that
the district court lacks subject matter jurisdiction, the case
shall be remanded" to state court. 28 U.S.C. § 1447(c). The
court cannot "ignore [a jurisdictional] defect; rather, [the]

court, noticing the defect, must raise the matter on its own."
Dept. of Corr. v. Schact, 524 U.S. 381, 389 (1998).  In cases
removed from the state system, the court must "resolve all
doubts about the propriety of removal in favor of retained state
court jurisdiction."  Marshall v. Manville Sales Corp., 6 F.3d
229, 232 (4th Cir. 1993) (citing Am. Fire & Cas. Co. v. Finn,
341 U.S. 6, 10 (1951)).

### III. Discussion

#### A.

As noted, the amount in controversy in a diversity
action must "exceed $75,000, exclusive of interest and costs."
28 U.S.C. § 1332(a)(1).  As a rule, "the sum demanded in good
faith in the initial pleading shall be deemed to be the amount
in controversy. . . ."  28 U.S.C. § 1446(c)(2).

In Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d
192 (4th Cir. 2008), it was noted that a district court,
believing the basis alleged in a notice of removal for
exercising subject matter jurisdiction to be questionable, can
either "invite a motion to remand . . . and resolve that motion
as it would any other motion" or "inquire sua sponte whether it
has subject matter jurisdiction and impose upon the defendants
the burden of demonstrating jurisdiction."  Ellenburg, 519 F.3d

6

at 199-200.  **Ellenburg** did not otherwise elaborate as to the proper procedure a district court should employ in such a case when engaging in an inquiry into the factual basis for subject matter jurisdiction.  In **Dart Cherokee Basin Operating Co., LLC v. Owens**, --- U.S. ---, 135 S. Ct. 547 (2014), however, the Supreme Court provided guidance: when a party challenges the amount in controversy allegation in a notice of removal, or the court inquires **sua sponte**, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  **Dart**, 135 S. Ct. at 554.  Thus, if the plaintiff does not demand a specific sum, the removing defendant must prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.  **McNutt v. Gen. Motors Acceptance Corp.**, 298 U.S. 178, 189 (1936); **see also** **Mulcahey v. Columbia Organic Chems. Co., Inc.**, 29 F.3d 148, 151 (4th Cir. 1994) (same).

Here, King demands specific compensatory damages in the amount of $70,400, and reasonable attorney's fees to the extent that he prevails on any of the declaratory judgment counts.  **See** King Compl., Count 4 (alleging $20,400 in compensatory damages against Erie and Margolis for professional negligence), Count 6 (alleging $50,000 in compensatory damages against Erie and Barker for violations of UTPA), and Count 7

7

(requesting attorney's fees).  King does not specify an amount with respect to any of the declaratory judgment claims.

In his response brief, King notes that he intentionally avoided specifying an amount of damages in excess of $75,000, and observes that "[i]t was defendants who removed alleging that [the amount in controversy requirement was met] and it is their burden to prove [it]."  King Response, p. 7. The defendants, in their joint memorandum in support of jurisdiction, assert that the amount in controversy requirement is satisfied by the compensatory and attorney fee demands.  <u>See</u> Defendants' Memorandum ("Def. Mem."), pp. 1-2, 9-11.  In the alternative, they assert that the amount is satisfied by the inclusion of the four declaratory judgment claims.  <u>Id.</u> at pp. 10-11.

B.

Attorney's fees are included in calculating the jurisdictional amount where a statute, contractual clause, or other source creates a substantive right to the requested fees. <u>See</u> <u>Springstead v. Crawfordsville State Bank</u>, 231 U.S. 541, 542 (1913); <u>Missouri State Life Ins. Co. v. Jones</u>, 290 U.S. 199, 201–202 (1933); <u>see</u> <u>also</u> Wright & Miller, 14A <u>Federal Practice & Procedure</u> § 37 (4th ed.) (same).  This appears to be the general rule, including the Fourth Circuit.  <u>See</u> <u>Saval v. BL Ltd.</u>, 710

8

F.2d 1027, 1033 (4th Cir. 1983); <u>Aikens v. Microsoft Corp.</u>, 159 F. App'x. 471, 475 (4th Cir. 2005). The rule is stated in Wright & Miller as follows:

> [T]he amount expended for attorney's fees [is] a part of the matter in controversy for subject matter jurisdiction purposes when [attorney's fees] are provided for by contract or by state statute or otherwise as a matter of right, since these are part of the liability being enforced.

14A <u>Federal Practice & Procedure</u> § 3712 (4th ed.).

King brings his declaratory judgment claims under the West Virginia Uniform Declaratory Judgments Act, W. Va. Code §§ 55-13-1 <u>et seq</u>., but his request for attorney's fees is based on two cases decided by the West Virginia Supreme Court of Appeals in 1986. One of those decisions allows an insured to recover attorney's fees accrued in successfully pursuing a declaratory judgment action against an insurer to determine the insurer's duty to defend. <u>See Aetna Cas. & Sur. Co. v. Pitriolo</u>, Syl. Pt. 2, 176 W. Va. 190 (W. Va. 1986) ("Where a declaratory judgment action is filed to determine whether an insurer has a duty to defend its insured under its policy, if the insurer is found to have such a duty, its insured is entitled to recover reasonable attorney's fees arising from the declaratory judgment litigation."). The other is <u>Hayseeds, Inc. v. State Farm Fire & Cas.</u>, 177 W. Va. 323, 329 (W. Va. 1986). ("[W]henever a

policyholder must sue his own insurance company over any
property damage claim, and the policyholder substantially
prevails in the action, the company is liable for the payment of
the policyholder's reasonable attorneys' fees.") (<u>citing</u>
<u>Pitriolo</u>, Syl. Pt. 2, 176 W. Va. 190).

According to the defendants, King's claim to
attorney's fees is sufficient to satisfy the amount-in-
controversy requirement. Def. Mem., pp. 9-11.  However, the
court need not reach the general question of whether attorney's
fees available under <u>Hayseeds</u> and <u>Pitriolo</u> are includable in the
amount-in-controversy requirement.  Attorney's fees are not
includable in the calculation in this particular case because
King is not entitled to recover them in the first instance.
King, an attorney, cannot be said to have "expended" any amount
for attorney's fees, as he is appearing <u>pro se</u>.  The
overwhelming weight of federal authority indicates that <u>pro se</u>
attorney litigants are not entitled to attorney's fees, even
where the statute in question expressly and unambiguously
provides for them.  <u>See, e.g.</u>, <u>Kay v. Ehrler</u>, 499 U.S. 432
(1991) (denying attorney's fees provided for by section 1988 to
<u>pro se</u> attorney litigant); <u>Wolfel v. United States</u>, 711 F.2d 66
(6th Cir. 1983) (same, but under Freedom of Information Act fee
shifting provisions); <u>White v. Arlen</u>, 614 F.2d 387 (4th Cir.

1980) (same, but under Truth in Lending Act fee shifting provisions).  Consequently, attorneys' fees are not included when calculating the amount in controversy.

C.

As an alternative basis for satisfying the amount in controversy requirement, the defendants assert that, "in the context of a declaratory judgment action seeking to determine the applicability of the policy to a particular occurrence . . . the amount in controversy is the value of the underlying claim[.]"  Def. Mem., pp. 10-11 (quoting Darbet, Inc. v. Bituminous Cas. Corp., 792 F. Supp. 487, 489 (S.D. W. Va. 1992) (Faber, J.)).  According to the defendants, the specifically-pleaded amounts in Counts 4 and 6, when combined with King's declaratory judgment counts, suffice to satisfy the amount in controversy requirement.  Id.

As a general rule, "[i]n actions seeking declaratory or injunctive relief . . . the amount in controversy is measured by the value of the object of the litigation."  Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977); see also McNutt v. Gen. Motors Acceptance Corp. of Indiana, 298 U.S. 178, 181 (1936) ("[J]urisdiction is to be tested by the value of the object or right to be protected against interference.").  In a declaratory judgment action over disputed

11

insurance coverage, the amount in controversy is "the maximum amount for which the [insurance] company could be held liable under the terms of the policy."  New Century Cas. Co. v. Chase, 39 F. Supp. 768, 771 (S.D. W. Va. 1941) (Watkins, J.).

In Count 1, King asks the court to declare whether, under West Virginia law, "a named insured [is] entitled to a copy of his/her coverage and/or claim files following defense under reservation and resolution of the third party claim previously asserted against him/her."  King Compl., p. 10.  In Count 2, King asks the court to declare whether, "post settlement (without payment or fault on the part of [p]laintiff)," Erie has met "its burden of proof to establish any facts which would give rise to [the] exclusions" Erie cited in its reservation of rights in the first Delaware action.  King Compl., p. 13.  In Count 3, King asks the court to "declare the rights and obligations of the parties" with respect to the Personal Catastrophe policy, under which a claim was apparently opened, but no exclusion invoked.  Id. at p. 14.  In Count 5, King asks the court to declare "whether West Virginia will adopt the [Restatement of] Insurance § 14 as presently drafted[.]" Id. at p. 16.

The value of the declaratory judgment claims here is unclear, for King does not place a specific value on the

declarations sought.  Where the value of the relief sought is unclear or uncertain, courts have required some quantum of evidence in support of the amount alleged to be in controversy. See, e.g., Dart Cherokee, 135 S. Ct. at 454 (requiring that "both sides submit proof [in an effort to show] by a preponderance of the evidence" that the jurisdictional amount, or more, is in controversy).  Yet, the defendants, upon whom the burden to do so falls, have presented no evidence to support their claim that the jurisdictional amount is in controversy in this case due to the presence of King's declaratory judgment claims, beyond the conclusory statement that the "requests for declaratory relief . . . unquestionably exceed the jurisdictional requirement[.]"  Def. Mem., p. 11.  The court has not located, and the parties have not pointed out, a case in which the amount in controversy requirement was deemed met, without any evidence of the value of the claim, simply because a declaratory judgment claim was involved.

The declaration in Count 1 -- respecting whether King is entitled to his claim file -- has no apparent monetary value, and the defendants identify none.  The declaration in Count 2 -- respecting whether Erie properly carried its burden in establishing facts relating to its reservation of rights in the first Delaware action -- appears to be moot, as the defendants

have argued elsewhere.  See, e.g., Erie Mem. Dismiss, pp. 7-8.
The record reflects that Erie provided a defense, albeit an
allegedly deficient one, that the defense resulted in a
favorable settlement, and that the cited exclusions were not
invoked.  See King Compl. ¶¶ 39-43.  Consequently, it is unclear
what value, if any, this declaration would have, there
apparently being no underlying claim still at issue.  Turning to
Count 3 -- in which King seeks a declaration regarding the
parties' rights and obligations under the Personal catastrophe
policy -- similar problems exist.  Chief among them is that no
live controversy appears to exist, inasmuch as the first
Delaware action ended in a settlement.  Further, although a
claim was opened under the Personal Catastrophe police, no
action appears to have been taken on it.  King himself states
that, "[a]lthough there are exclusions contained in the Personal
Catastrophe police, none have been asserted or reserved and,
indeed, no formal response . . . has ever been received."  King
Compl., p. 14.  Finally, Count 5 -- in which King asks the court
to declare "whether West Virginia will adopt [section 14 of the
Restatement of Insurance]" -- has no apparent or asserted value
to either party, even supposing that the court is empowered in
this case to make such a declaration in the first instance.

In a case like this, more evidence is needed than the defendants' bare assertion that the amount in controversy requirement is satisfied simply because the claims seek declaratory relief.  In the absence of evidence assigning some value to King's declaratory judgment claims, the court cannot conclude that the defendants have proven by a preponderance of the evidence that the amount in controversy requirement is satisfied.

Inasmuch as federal courts must "resolve all doubts about the propriety of removal in favor of retained state court jurisdiction," <u>Hartley v. CSX Transp., Inc.</u>, 187 F.3d 422, 425 (4th Cir. 1999) (<u>citing</u> <u>Marshall</u>, 6 F.3d at 232), the court concludes that the amount in controversy requirement is not satisfied in this case.  Because the court lacks jurisdiction on that basis, the court need not reach the question of fraudulent joinder.

## IV. <u>Conclusion</u>

Based upon the foregoing, the court concludes that it lacks subject matter jurisdiction.  The court, accordingly, ORDERS that this action be, and it hereby is, remanded for all further proceedings to the Circuit Court of Wood County, West Virginia.

The Clerk is directed to strike this matter from the docket of the court.

The Clerk is further directed to forward a copy of this memorandum opinion and order to all counsel of record and any unrepresented parties and a certified copy to the clerk of court for the Circuit Court of Wood County, West Virginia.

DATED: March 31, 2016

John T. Copenhaver, Jr.
United States District Judge

16